THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. EMMETT C. ADAMS, *as Agent for Elizabeth B. Weaver et al.*

#### No. 138.

1. BILL OF LADING—*Authority of Agent — Judgment on Pleadings.* Where a petition alleges that a railway company was a carrier of goods for hire and owned a line of railway in M. county, Kansas, passing through the city of C.; that on a certain day it received of G. & W., at its station at C., in M. county, one car of poultry, 20,000 pounds, of the value of $1,000, consigned to A., B. & Co., N. O., and that the duly authorized agent of said railway company issued a bill of lading therefor; that G. & W. took said bill of lading to a bank at C. and drew a draft for $500 on the consignees, and attached said bill of lading thereto; that said draft, with the bill of lading attached, in due course of business was presented to the consignees at their place of business in N. O., who on the faith of the bill of lading advanced the money and paid said draft; that the railway company neglected to ship said car of poultry to the consignees at N. O.; and where the answer of the railway company does not deny issuing the bill of lading, but alleges that its agent at its station at C. did not have authority to issue bills of lading except for property actually received, and that G. & W. did not deliver all of the poultry named in the bill of lading, but agreed to complete the load at the stations along the line of said railway; that they only placed five crates of poultry in

the car at C., and were to complete the 20,000 pounds at its stations at A., O., H., and C.; that when the car containing part of the poultry arrived at the station of A., G. & W. did not furnish the poultry to complete the load, and the car was stopped there; that the said G. & W. absconded, and the poultry then in the car had to be sold to prevent great loss, and that said poultry was sold at A. for all that it was worth in its then condition, and it offers to pay to the consignees the amount for which the poultry was sold, or confess judgment for the same, with all costs of suit: *Held*, That the plaintiffs below were entitled to judgment on the pleadings.

2. —— *Estopped from Denying its Truth.* Where it is admitted that defendant below was a railroad company, owning and operating a line of railroad through M. county, in Kansas, and that its line passed through the city of C., and that it was a common carrier of goods for hire, and that the agent at its station at C. had authority to receive goods for shipment over its own and connecting lines, and to give bills of lading therefor, and where such agent has issued his bill of lading to the consignors and they have drawn a draft on the consignees with the bill of lading attached, the railway company is then estopped from denying the truth of the recitals therein.

MEMORANDUM.— Error from Montgomery district court; J. D. McCUE, judge. Action by Emmett C. Adams, as agent for Elizabeth B. Weaver and others, against The St. Louis & San Francisco Railway Company to recover on a draft. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein, filed July 13, 1896, states the material facts.

*J. W. Gleed*, and *C. Hamilton*, for plaintiff in error.
*Joseph Chandler*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: This action was commenced in the district court of Montgomery county, Kansas, on the 5th day of May, 1891, by Emmett C. Adams, for Adams, Beck & Co., a copartnership, against the St.

Louis & San Francisco Railway Company, to recover the sum of $501.25 on a certain draft drawn by Gideon & Wallace, attached to a bill of lading issued by the station agent of the plaintiff in error, at its station at Cherryvale, Kan., dated January 12, 1891, reciting that the said railway company had received of Gideon & Wallace, at Cherryvale, Kan., a car, No. 373657, of live poultry, 20,000 pounds, consigned to Adams, Beck & Co., New Orleans, La.

The plaintiffs below in their petition alleged that they were a partnership, and as such, on and long before the 12th day of January, 1891, were doing business as partners engaged in carrying on the business of commission poultry dealers in New Orleans, La., buying, selling, shipping and receiving shipments of poultry, and making advances on bills of lading and consignments of poultry; that on the 12th day of January, 1891, the St. Louis & San Francisco Railway Company was a corporation doing business as a railway company in Montgomery county, Kansas, and that its line of railroad extended through the town of Cherryvale and other points therein, and was during said time engaged in operating said line of railway through, into and by said city and county aforesaid, carrying and transporting all such property as is usual for railway companies to carry and transport; that on said 12th day of January, 1891, and some time prior thereto, Gideon & Wallace were engaged in shipping live poultry from said city of Cherryvale, Kan., and other points in said state to the city of New Orleans, La., and other points, over said railway and connecting lines, consigned to the plaintiffs and others, receiving from said railway agents bills of lading therefor, and drawing drafts upon these plaintiffs as commission merchants as aforesaid, and others,

against such shipments; that on said 12th day of January, 1891, at the city of Cherryvale, Kan., said defendant, by its duly authorized agent, issued to said Gideon & Wallace an original bill of lading of that date, stating that said defendant had received of said Gideon & Wallace, at Cherryvale, Kan., a car, No. 373657, of live poultry, 20,000 pounds, consigned to these plaintiffs by their said firm name, at their place of business in New Orleans, La., a copy of the bill of lading being attached to said petition; that 20,000 pounds of live poultry at said time and place were of the value of $1,000; that upon the same day the said Gideon & Wallace took said bill of lading to the First National Bank at Cherryvale, Kan., and drew a draft of that date, with said bill of lading attached thereto, on these plaintiffs by their firm name at their said place of business, for the sum of $500, with exchange, payable to the order of Charles A. Mitchell, cashier of said bank, who duly indorsed the same to the National Bank of Kansas City, Mo., for deposit and credit of said First National Bank of Cherryvale, Kan., and said National Bank of Kansas City indorsed the same to the Merchants National Bank of St. Louis, Mo., and the said last-named bank indorsed the same to the State National Bank of New Orleans, La.; and on the 16th day of January, 1891, the said plaintiffs in good faith, wholly relying upon said bill of lading attached to said draft, paid said draft through the New Orleans clearing-house to the Metropolitan Bank of New Orleans, La., paying to said bank $500, the face of said draft, and $1.25 exchange thereon, a copy of the draft being attached to said petition; that said defendant after issuing said bill of lading forwarded said car of poultry to Altamont, Labette county, Kan., on its own

road, and no further, and never forwarded said poultry or any portion thereof any further than to said station of Altamont, and never transported the same or any portion thereof to New Orleans by its own or any connecting line, and did not deliver the same or any part thereof to any connecting line, and that plaintiffs never received said car of poultry or any portion thereof; that said Gideon & Wallace, and each and both of them, absconded, and they, and each of them, are worthless and wholly insolvent, and that there is now due the plaintiffs from the defendant the sum of $501.25 so paid by them and advanced on said bill of lading, with interest from date, for which they claim judgment.   To this petition the defendant below filed the following answer:

"Now comes the defendant in the above-entitled cause, and for answer to the plaintiffs' petition filed herein, says: It admits that is a corporation engaged in the operation of a line of railroad, and says that, on January 12, 1891, Gideon & Wallace put five crates of poultry into one of its cars, No. 373657, at Cherryvale, Kan., and announced to the station-agent of said defendant at that place that they would finish loading said car with poultry at Altamont, Oswego, Hallowell, and Columbus, at which places arrangements were made for the car to stop; that said station-agent at Cherryvale issued to Gideon & Wallace a bill of lading for said car to be so loaded at Altamont, Oswego, Hallowell, and Columbus, and forwarded said car with five crates of poultry therein contained to Altamont, said station, for further loading; that the persons placed in charge of said poultry by said Gideon & Wallace went with said car to said station of Altamont, but at said station of Altamont abandoned the same, and absconded and disappeared from the country; that said car remained at said station of Altamont with said five crates of poultry in the same waiting for said Gideon & Wallace, or their agent, to come and finish loading the same, until said poultry

commenced to die, and it was necessary, in order to save a portion of their value, to sell the same ; that this defendant thereupon sold said five crates of poultry for $9.03, which was the full value of said poultry at said time in the condition in which it then was. And defendant further says, that it did not at any time receive from said Gideon & Wallace for shipment to said plaintiffs any more than five crates of poultry, as hereinbefore stated. This defendant further denies that its said agent at Cherryvale had any authority to issue any bill of lading for any property not actually received by him for transportation. This defendant hereby offers and tenders to said plaintiffs the amount of money, to wit, $9.03, received for the sale of said poultry at Altamont, or offers to confess judgment for said amount of $9.03, together with all costs accruing to the date of filing of this answer.''

This answer was verified in the following manner :

'' State of Kansas, County of Shawnee, ss.

''A. A. Hurd, of lawful age, being first duly sworn, says : He is one of the attorneys for the above-named defendant ; that he has read the above and foregoing answer, and that the matters and things therein set forth are true.—A. A. Hurd.

'' Subscribed and sworn to before me, this 17th day of July, 1891.    Geo. N. Holmes, *Notary Public.*''

These were all the pleadings filed in this action. Plaintiffs below moved the court to render judgment in their favor for the amount claimed by them in their petition, and against the defendant, on the pleadings herein, for the reason that the defendant's answer states no defense to the plaintiffs' action as set forth in the petition. The court sustained the motion for judgment, and made the following findings of fact thereon :

''1. That the plaintiffs were partners engaged in the commission poultry business, at New Orleans, La., and were in the habit of making advances on bills of

lading and consignments of poultry, and the defendant was a railroad corporation and engaged in doing business as a railway company in the city of Cherryvale, Montgomery county, Kansas; that its line of railroad running into and through said city and county, and receiving at said city and transporting therefrom all poultry usually carried by such corporation, all as in plaintiffs' petition alleged.

"2. That on January 12, 1891, and long prior thereto, Gideon & Wallace were engaged in shipping live poultry from Cherryvale, Kan., and other points to New Orleans and other points, over defendant's said road and connecting lines, consigned to plaintiffs and others, receiving from defendant's station-agent bills of lading therefor, and drawing drafts upon plaintiffs as commission merchants, and others, and against such shipments, as by plaintiffs alleged.

"3. That on January 12, 1891, at said city of Cherryvale, Kan., said defendant, by its duly authorized agent, issued to said Gideon & Wallace an original bill of lading of that date, reciting that defendant that day had received from said Gideon & Wallace a car, No. 373657, of live poultry, of the weight of 20,-000 pounds, consigned to said plaintiffs at New Orleans, La., where the same was worth $1,000, as in plaintiffs' petition alleged.

"4. That said Gideon & Wallace at once took said bill of lading to the First National Bank of Cherryvale, Kan., and drew a draft of said date, with said bill of lading attached thereto, on the plaintiffs at New Orleans, La., for $500 and exchange, payable, indorsed and sent in due course of business through the various banks, and paid by plaintiffs at New Orleans, La., all as by plaintiffs alleged.

"5. That the defendant, after issuing said bill of lading, forwarded said car to Altamont, Labette county, Kansas, on its own road, and no further, and never forwarded said poultry or any portion thereof any further than Altamont, as aforesaid, and never transported the same or any portion thereof to New Orleans, La., by its own or connecting lines, and

never delivered the same, or any part thereof, to any connecting line or carrier, and plaintiffs never received said car of poultry or any portion thereof, and said Gideon & Wallace, and each of them as aforesaid, and individually, were and are worthless and wholly insolvent since the date of said bill of lading, and they and each of them absconded at the time.

"6. That there is now due from the defendant to the plaintiff on said bill of lading the said sum of money advanced by them, $501.25, with interest thereon from January 16, 1891, at the rate of 6 per cent. per annum, now amounting to $544.25."

The court rendered judgment in favor of the plaintiffs for said amount. Defendant filed a motion for new trial, which was overruled, and it excepted, and brings the case here and asks that the same be reviewed.

It is contended by plaintiff in error that the court erred in rendering judgment against the railway company on the pleadings.

Section 128 of the code of civil procedure reads as follows :

"Every material allegation of the petition, not controverted by the answer, and every material allegation of new matter in the answer, not controverted by the reply, shall, for the purposes of the action, be taken as true; but the allegation of new matter in the reply shall be deemed to be controverted by the adverse party, as upon direct denial or avoidance, as the case may require. A demurrer to a reply shall not be held to admit any of the facts alleged in said reply for any purpose other than to determine the sufficiency thereof. Allegations of value, or of amount of damages, shall not be considered as true by failure to controvert them; but this shall not apply to the amount claimed in actions on contract, express or implied, for the recovery of money only."

The contention is that this is not an action on con-

tract; that the allegations of value and amount of damages should not be considered as true by failure to controvert them; that this statute only applies to amounts claimed in actions on contract, expressed or implied, for the recovery of money only. It is claimed that this is not an action on the bill of lading, or the parties would claim judgment for the value of the whole car-load of poultry; that therefore it should be treated as an action in tort. We think this action was based on the bill of lading. The defendant below in its answer so concedes, but claims that it was a false one. We think the action is one on contract. The bill of lading acknowledges the receipt of one car of poultry, 20,000 pounds, and agrees to ship the same to the plaintiffs below as consignees, over its own and connecting lines of transportation. The petition alleges that the poultry was at the time and place of the value of $1,000, and the answer concedes this fact. Under the recitals in the bill of lading, the railway company as common carrier agreed for hire to deliver the poultry to the consignees in New Orleans, La., and failing to do so was liable to the consignees for so much as they advanced on the draft attached to the bill of lading.

It is admitted that the defendant below was a railway company owning and operating a line of railway through Montgomery county; that its line passed through Cherryvale, and was a common carrier of goods for hire; that the agent at its station at Cherryvale, Kan., had authority to receive goods for shipment over its own and connecting lines and give bills of lading therefor. When this is conceded, and the agent has issued his bill of lading to the consignors, and they have drawn a draft on the consignees with the bill of lading attached, the defendant below is then estopped from denying the truth of the recitals

therein, and becomes liable to the consignees for such sums of money as they may advance on the faith of said bill of lading.

In the case of *Savings Bank v. A. T. & S. F. Rld. Co.*, 20 Kan. 520, which was an action based upon four bills of lading issued by the Atchison, Topeka, & Santa Fe Railroad Company, covering four shipments of wheat, two of the bills of lading called for 23,000 pounds of wheat each, and two called for 25,000 pounds of wheat each, all consigned to the order of Henry Schneider, at St. Louis, Mo. Henry Schneider delivered to the railway company a certain load of wheat, which it put into a car to be consigned to his order or assigns at St. Louis, Mo. At the time of the delivery of the wheat to the railway company the defendant's agent issued and delivered to Schneider two original bills of lading, of the same terms, tenor, and effect, and each showed the receipt of 23,000 pounds of wheat, and its consignment to Henry Schneider or to his order or assigns. There was not more than 23,000 pounds of wheat delivered, covered by the two bills of lading. Schneider procured the issue of two original bills of lading, instead of one, upon his statement that he wished one original bill of lading to file in his office as a memorandum of the transaction. Schneider took the two original bills of lading to Wichita, and negotiated one of them to Messrs. Woodman & Son, for a valid consideration, and negotiated the other original bill of lading to the savings bank. The bank accepted the bill of lading from Schneider and advanced him in good faith the money sued for upon the bill of lading, wholly relying upon it for security for the advancement, and without any knowledge that two bills of lading had been issued for the wheat. The wheat was forwarded to St. Louis

by the railroad company and there delivered to the holders of the bill of lading so negotiat d to Messrs. Woodman & Son. The defendant was a corporation engaged in operating a railroad through the city of Wichita, by and through the town of Valley Centre, and by and through the county of Sedgwick, in the state of Kansas, to Kansas City, in the state of Missouri, and in carrying and transporting grain and other commodities for hire to St. Louis, Mo. It was the usage and custom of the railroad company, at its station at Valley Centre, to issue but one original bill of lading for any one shipment of grain, which custom was known to plaintiff. The agent of the defendant, by whom the bills of lading were issued, had authority to receive wheat to be transported by the railroad company over its line to St. Louis, Mo., and to issue bills of lading therefor; but the company had given the agent no authority to issue more than one original bill of lading for any single shipment. Schneider being worthless, and having absconded, the bank lost the principal part of the amount of its advancement, and thereupon brought an action to recover the amount of its loss. Horton, C. J., delivering the opinion of the court, says:

"In accordance with well-settled rules, the plaintiff, knowing the custom of the defendant to issue only one original bill of lading for any one shipment of grain, having made advances on the faith of the bill of lading issued by the agent of the company within the apparent scope of his authority, was entitled to recover of such defendant all damages resulting to him from the issuance of two original bills of lading for the same grain — or, perhaps we might better say, for this false bill of lading — as the defendant was bound by the act of its agent, and therefore estopped from denying it had the grain stated in the bill sued on. When the defendant knew to what uses bills of lading

could be and usually were employed, it was guilty of negligence in issuing two original bills for the same wheat, in violation of its usual custom. It is true one was issued so that Schneider might file it away; but when issued it should have been marked or designated as a 'duplicate,' so as to be incapable of being hypothecated to defraud those who dealt in such paper. . . . Considering the custom of the railroad company, the mode of doing business with bills of lading, the bank was guilty of no negligence in advancing the money to Schneider. The company was guilty of culpable negligence, which resulted in the consummation of the fraud. 'The representations in the bills were made to *any one* who in the course of business might think fit to make advances on the faith of them.' The bank acted on these representations in good faith. Schneider, who obtained the fruits of this fraud, has fled the state, and is insolvent. The bank or the railroad company must suffer. Who, under all the circumstances, ought to bear the loss? The superior equity is with the bank. It advanced moneys on certain representations which were virtually untrue. In this case is presented every element to constitute an estoppel *in pais*, within the doctrine that, where one of two innocent persons must suffer by reason of the fraud or misconduct of a third, he by whose act, omission or negligence such third party was enabled to consummate the fraud ought to bear the loss. Thus the defendant was liable, and the court below committed error in holding otherwise."

There was no error in rendering judgment on the pleadings. The judgment of the district court is affirmed.

All the Judges concurring.